**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| DAVID L. LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09-2090 |
| ) | |
| LARRY MILLS, TODD DAMILANO, ) | |
| SCOTT CORRIE, and CLINT GRAY, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

In April 2009, Plaintiff David Lewis filed a Complaint (#1) against Defendants Larry Mills, Todd Damilano, Scott Corrie, and Clint Gray, alleging violations of the First Amendment to the United States Constitution and also alleging malicious prosecution under Illinois law. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff has alleged constitutional claims.

In June 2009, Defendants Mills and Damilano filed a Motion To Dismiss (#12). In July 2009, Defendant Gray filed a 12(b)(6) Motion To Dismiss (#20) and Defendant Corrie filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) (#21), adopting the arguments in Defendants Mills and Damilano's motion. Plaintiff subsequently filed his Consolidated Memorandum of Law in Response to Motions To Dismiss (#22). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants Mills and Damilano's Motion To Dismiss **(#12)** be **GRANTED in part** and **DENIED in part**.

### I. Background

The following background is taken from the complaint. At relevant times, Defendant Mills worked as an Assistant State's Attorney in Vermilion County, Illinois. Defendant Damilano worked for the Vermilion County Sheriff as an investigator and a sworn law enforcement officer. Defendant Corrie owned and operated a nightclub named "Play Pen

Gentlemen's Club" (hereinafter "Club").  Defendant Gray was a business associate of the Club owners.

Plaintiff is suing the parties in their individual capacities.  Plaintiff alleges that Defendants Mills and Damilano were acting under color of law at relevant times.  Based on their relationship with Mills and Damilano, Defendants Corrie and Scott were also acting under color of law at relevant times.

In 2005, the FBI was investigating whether Defendant Mills had been engaging in unlawful criminal activity or misconduct relating to his dealings with the Club.  Special Agent Luke Humphrey informed Plaintiff about the investigation, advising him that the FBI suspected that Mills was providing legal favors to street gangs in return for drugs and sexual favors from the Club owners and employees.

Plaintiff began questioning performers at the Club to gather information on Defendant Mills' involvement with the owners and performers.  Several performers told Plaintiff that they had provided sexual favors and cocaine in exchange for Mills' agreement to drop or reduce criminal charges against individuals associated with Club owners.  Plaintiff told the FBI what he had learned about Mills' conduct.

Defendant Mills became aware that Plaintiff was speaking with the FBI and told him not to talk to the FBI about Mills' actions. When Mills realized that Plaintiff would continue talking to the FBI, Mills retaliated against Plaintiff by asking Damilano, Corrie, and Gray to collect fabricated information suggesting that Plaintiff had engaged in criminal misconduct.  Plaintiff alleges that Mills acted in an investigatory role when he asked Damilano, Corrie, and Gray to collect fabricated information.  With Mills' direction and assistance, Damilano, Corrie, and Gray gathered evidence that they knew to be fabricated in an attempt to instigate a criminal

prosecution against Plaintiff.  Defendants did this in retaliation for his speaking out on Mills' criminal misconduct.

Defendant Mills used the fabricated evidence that Defendants gathered to indict Plaintiff on 49 felony counts in April 2007.  Mills lacked probable cause to believe that Plaintiff had committed the 49 felony counts.  As a result of this indictment, Plaintiff was incarcerated for about 15 months.  Plaintiff was never convicted of any of the 49 felony counts.

Plaintiff's complaint alleges that Defendants' conduct violated Plaintiff's right to free speech and also constituted malicious prosecution under Illinois common law.

## II.  Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles":  First, the plaintiff must plead sufficient facts to give a defendant fair notice of the claim and the grounds upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'."  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss for failure to state a claim, the Court is generally limited to the allegations contained in the pleadings.  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  Furthermore, the Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl.*, 550 U.S. at 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint).  A claim is sufficient only to the extent that it "contain[s] either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl.,* 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)).

### III.  Analysis

Defendants Mills and Damilano argue that the Court should dismiss Plaintiff's First Amendment claim because Plaintiff was speaking in his capacity as a police officer and therefore he was not speaking as a citizen for purposes of the First Amendment.  They argue that the Court should dismiss the First Amendment claim (1) as to Mills, because a retaliatory prosecution claim cannot lie against a prosecutor, and (2) as to Damilano, because Plaintiff failed to allege that Damilano deceived or "induced" the prosecutor to file false charges.  Defendants also argue that the existence of probable cause bars both claims.  Finally, Defendants argue that Court should dismiss the malicious prosecution claim because Plaintiff cannot show a lack of probable cause or that the criminal proceedings ended in a manner favorable to Plaintiff.  As to Damilano, Defendants contend that Plaintiff failed to state a claim because he did not allege that Damilano concealed facts or misled the prosecutor.

### A.  Whether the Speech is Constitutionally Protected

To establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff suffered a deprivation likely to deter the free exercise of the plaintiff's First Amendment rights; and (3) the plaintiff's speech was a but-for cause of the defendant's retaliation.  *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006) (describing the elements of First Amendment retaliation in the employment context); *Fairley v. Andrews*, No. 07-3343, 2009 WL 2525564, *5 (7th Cir. Aug. 20, 2009) (recognizing that the United States Supreme Court has rejected the former standard that the plaintiff's speech could be a "motivating" factor; under the new

standard, unless a statute provides otherwise, the plaintiff must establish but-for causation in all suits under federal law) (citing *Gross v. FBL Fin. Servs., Inc.*, ___ U.S. __, 129 S.Ct. 2343, 2351 (2009)).

Defendants Mills and Damilano first argue that the Court should dismiss Plaintiff's First Amendment claim because Plaintiff was speaking pursuant to his duties as a police officer, therefore, he was not speaking as a citizen for purposes of the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (in the context of a First Amendment retaliation claim against an employer, holding that a public employee's speech is not protected if he speaks pursuant to his official duties). In response, Plaintiff contends that *Garcetti* is inapplicable here because Plaintiff's claim did not arise in the context of his employment.

The First Amendment prohibits government actors from violating an individual's right to free speech. Cases analyzing First Amendment retaliation claims often arise in the context of retaliation by a government entity who employs the plaintiff. *Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1328 n.2 (10th Cir. 2007) (referring to the "'enormous variety of fact situations' presented in cases where public employees are terminated from government employment for reason of their spoken or written expression"). These employment-related cases involving public entities as defendants necessarily involve plaintiffs who are public employees.

In *Garcetti*, the Supreme Court held that whether speech is constitutionally protected depends on whether the employee has spoken pursuant to his or her official duties. If so, then the employee is not speaking as a citizen for First Amendment purposes, and the Constitution does not insulate the communications from employer discipline. *Garcetti,* 547 U.S. at 421. The rationale for this rule is that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself

5

has commissioned or created." *Id.* Thus, in the context of a First Amendment claim against a public employer, it is significant whether the speech occurred pursuant to the employee's official duties.

Nevertheless, the protections of the First Amendment are not limited to claims against public employers; employment claims are merely one subset of First Amendment cases. The Seventh Circuit court has recognized the possibility that speech made as part of one's job may be protected in some situations but not in others. In *Fairley v. Andrews*, two prison guards sued coworkers, complaint handlers, the sheriff, and the county, alleging that the defendants violated their First Amendment rights by assaulting and threatening them for reporting abuse of prisoners by guards. The Seventh Circuit court discussed *Garcetti*'s holding, stating as follows:

> [Defendants] Bercasio, Fermaint, and the other guards are not plaintiffs' employer, however. Whether *Garcetti* protects their actions is a novel question. To recover under the first amendment, a plaintiff must prove, among other things, both that his speech was "protected" and that the government's (more accurately, a given state actor's) justification for curtailing the speech was inadequate. *Garcetti* appears to address the first question, but its reasoning focuses on the justification of a particular defendant: the government employer. Thus it is conceivable that the Court might hold the same speech "not protected" vis-à-vis the employer, but "protected" vis-à-vis co-workers.
>
> This case illustrates the importance of properly characterizing *Garcetti*'s holding. If plaintiffs' speech is categorically not protected, any state actor can punish plaintiffs in any way he wishes without incurring liability under the first amendment. But if the Justices instead dealt with the justification of a particular state actor, the acts of one defendant (the sheriff) might be justified, while the acts of others (fellow guards) might not, for guards cannot assert the same interest in maintaining smooth operations as the Jail's administrators. Imagine that Cook County's in-house counsel, furious about the snitching, beat up Fairley after work. Why should the County's need for flexibility in running its Jail insulate the actions of all state actors? Though we have treated *Garcetti* as dealing with the question whether speech is protected, see, e.g., *Chaklos v. Stevens,* 560 F.3d 705, 711-12 (7th Cir. 2009); *Renken v. Gregory,* 541 F.3d 769, 773-75 (7th Cir. 2008), we have never considered how it applies to a non-employer.

*Fairley*, 2009 WL 2525564, at *5. The court subsequently declined to address the question of how *Garcetti* applies to punishments meted out by nonemployers because the plaintiffs had "framed their case in a way that can yield one of only two results: either everyone is liable under

the first amendment or no one is liable. Since the first amendment does not support a claim against the sheriff, all defendants win." *Id.* at *6.

In this case, Plaintiff has alleged that the retaliation arose not from his employer, but from the actions of other governmental actors. The circumstances in this case raise the issue that the Seventh Circuit court referred to in *Fairley*: Why should the fact that an employer has a cognizable interest in "promoting the efficiency of the public services it performs through its employees" (*Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*, 391 U.S. 563, 568 (1968)) insulate the actions of all state actors who might violate a public employee's constitutional rights? In this case, Plaintiff happens to be a public employee but the retaliation claim has little to do with his employment other than it placed him in a position to do something that led to retaliation by an unrelated state actor. Thus, the fact that Plaintiff's speech may have occurred in the context of his job duties should not be the defining criteria for determining whether Plaintiff's speech is protected under the First Amendment in this situation. The Court concludes that the government's needs *as an employer* should not insulate the actions of state actors who do not have an employment relationship with a public employee asserting a First Amendment violation. As a result, at this point, the Court cannot conclude that Plaintiff's speech is not protected simply because the speech at issue may have occurred in the context of Plaintiff's job duties. Accordingly, the Court will not recommend dismissing the First Amendment claim on the basis that Plaintiff's speech occurred within the context of his job duties.

**B. Whether Plaintiff Can Allege a First Amendment Claim Against Defendant Mills**

Defendants next argue that a retaliatory prosecution claim cannot lie against Defendant Mills because he is a prosecutor and prosecutors have absolute immunity for their prosecutorial actions. It is well-settled that prosecutors are absolutely immune for their decisions to prosecute, regardless of their motive. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) ("immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence"). Thus, Mills' motive is irrelevant and Plaintiff cannot recover damages for his conduct, malicious or otherwise, as long as it was within the scope of Mills' prosecutorial duties.

Defendants have referred to the First Amendment claim as "retaliatory prosecution." However, Plaintiff has not limited his claim to that theory. In fact, Plaintiff expressly alleged that Mills acted in the role of an investigator when he directed other Defendants to collect fabricated information. (#1, ¶ 13.)

Defendants contend that Plaintiff has attempted to circumvent prosecutorial immunity by describing Defendant Mills' conduct as investigatory; furthermore, the allegation that Mills' conduct was investigatory is conclusory and the complaint does not allege enough facts to state a claim to relief that is plausible on its face. Defendants contend that because Plaintiff's damages arose from his indictment and the indictment led to Plaintiff's incarceration, "it would be disingenuous to allow Plaintiff to nullify absolute prosecutorial immunity simply by classifying ASA Mills' actions as 'investigative' in nature." (#13, p. 9.) Thus, Defendants contend that Plaintiff is alleging nothing more than a garden variety retaliatory prosecution claim for which Mills is protected by absolute immunity.

The Court disagrees with Defendants. When a prosecutor supervises, conducts, or assists in investigating a crime, or gives advice to the police, he performs functions normally associated with police investigation. *Richards v. City of New York*, No. 97 CIV. 7990, 1998 WL 567842, *2 (S.D.N.Y. Sept. 3, 1998) (unreported) (citing *Burns v. Reed*, 500 U.S. 478, 493 (1991)). Investigatory activities are not protected by absolute immunity. *Burns*, 500 U.S. at 493 ("We do not believe . . . that advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process' . . . that it qualifies for absolute immunity" (internal citations omitted)).

Furthermore, as Plaintiff points out, the Supreme Court has stated that a prosecutor is not entitled to absolute immunity for actions that are investigatory in nature. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, [absolute] immunity should protect the one [(the prosecutor)] and not the other [(the detective)].") Thus, to the extent that Plaintiff's First Amendment claim

against Defendant Mills is based on his instructions to other Defendants to collect fabricated information, the claim is not barred by absolute immunity. Accordingly, the Court recommends denying the motion to dismiss the First Amendment Claim against Mills on the basis of absolute immunity.

### C. Whether Plaintiff Has Alleged a First Amendment Claim Against Defendant Damilano

Defendants next argue that a retaliatory prosecution claim cannot lie against Defendant Damilano. Specifically, Defendants contend that Damilano cannot be held liable for his testimony before the grand jury that indicted Plaintiff or for his investigation of Plaintiff. In addition, Defendants argue that Plaintiff has failed to state a claim because he did not allege that Damilano induced Mills to prosecute Plaintiff.

A review of the complaint shows that Plaintiff's First Amendment claim against Damilano does not appear to be based on his grand jury testimony. Even if it were, it is well-settled that police officers and investigators testifying as witnesses, even perjuriously, are protected by absolute immunity from civil liability for their testimony at trial. *Briscoe v. LaHue*, 460 U.S. 325, 343-45 (1983). The Seventh Circuit has extended this immunity to provide immunity from liability for grand jury testimony. *Kincaid v. Eberle,* 712 F.2d 1023, 1024 (7th Cir. 1983).

In his complaint, Plaintiff alleges as follows:

14. At the direction of and with the assistance of Mills, Damilano, Corrie and Gray all gathered evidence that they knew to be fabricated in an attempt to instigate a criminal prosecution against Lewis.
15. The rationale underlying the actions of Mills, Damilano, Corrie and Gray in gathering fabricated evidence against Lewis was in retaliation for his speaking out on Mills' [(*sic*)] criminal misconduct.

9

(#11, ¶¶ 14-15.)  Based on these allegations, it appears that Plaintiff is alleging a claim against Damilano of "successful retaliatory inducement to prosecute." *Hartman v. Moore,* 547 U.S. 250, 256 (2006).  The Supreme Court described this as a constitutional claim against an official "who may have influenced the prosecutorial decision but did not himself make it." *Id.*  To succeed on such a claim, the plaintiff must show a causal connection between the official's retaliatory animus and a subsequent injury in a retaliation action.  *Id.* at 259.  He "must show that the nonprosecuting official acted in retaliation, and must also show that [the official] induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.* at 262.  "Thus, the causal connection required here is . . . between the retaliatory animus of one person and the action of another."  *Id.*  The plaintiff also must plead and prove, as an element of his case, that there existed no probable cause to support the underlying charge.  *Id.* at 265-66.

Here, Plaintiff alleged in Paragraph 14 that Damilano "gathered evidence . . . in an attempt to instigate a criminal prosecution against Lewis."  (#11, ¶ 14.)  The Court notes that the complaint is internally inconsistent because it alleges that all of the four Defendants instigated the criminal prosecution.  However, a plaintiff may plead in the alternative.  Usually, a plaintiff alleges his contradictory claims in separate counts, which clearly makes it easier for the Court to sort out which allegations give rise to a particular claim.  The Court cannot speculate as to how strongly each Defendant urged Mills to bring charges or influenced his decision to charge Plaintiff.  It is plausible that one of the other Defendants may have instigated the prosecution.  *See, e.g., Anderson v. Simon*, 217 F.3d 472, 476 (7th Cir. 2000) (stating that the police are not obligated to adhere to the suggestions of the state's attorney's office).  Accordingly, the Court concludes that Plaintiff has adequately alleged that Damilano induced the prosecutor to bring charges that would not have been initiated without his urging, and recommends denying the motion to dismiss the First Amendment claim against Damilano.

### D.  Whether the Existence of Probable Cause and
### the Lack of a Favorable Resolution Bar the Claims

Defendants next argue that the Court should dismiss both of Plaintiff's claims because probable cause existed for the prosecution and the prosecution did not resolve favorably for Plaintiff.  In support of these arguments, Defendants attached copies of transcripts of grand jury proceedings held March 30, 2007, and April 11, 2007, copies of exhibits presented to the grand jury, a copy of Plaintiff's indictment dated April 11, 2007, the court clerk's certificate regarding the indictment, information, signed jury waiver, and docket sheet, as well as copies of those documents, a copy of the transcript of a guilty plea hearing held June 9, 2008, and a copy of an information dated June 9, 2008.

The Court will first consider this argument as it relates to the malicious prosecution claim.

### 1.  Malicious Prosecution

Under Illinois law, to state a cause of action for malicious prosecution, a plaintiff must allege facts showing:  (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceedings; (4) the presence of malice; and (5) damages resulting to the plaintiff.  *Mut. Med. Plans, Inc. v. County of Peoria*, 309 F. Supp. 2d 1067, 1080 (C.D. Ill. 2004).

Defendants state that Plaintiff's indictment and the grand jury testimony establish the existence of probable cause for Plaintiff's prosecution.  Defendants rely on a Sixth Circuit case to support the premise that an indictment by a grand jury conclusively determines the existence of probable cause, but they present no precedential authority.  *See Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (finding that an indictment by a properly-constituted grand jury conclusively determines the existence of probable cause).  Defendants also state that Plaintiff has not alleged in his complaint that Defendants fraudulently obtained the grand jury indictment.  Defendants wrap up this argument by stating that, given the testimony of the witnesses at the

11

grand jury proceedings, the indictment shows that probable cause existed for the state to prosecute Plaintiff.

Plaintiff acknowledges that other courts in this district have concluded that an indictment may constitute *prima facie* evidence of probable cause. *See Mut. Med. Plans*, 309 F. Supp. 2d at 1082. However, he points out that he need not rebut that fact at this stage of the proceedings.

Plaintiff has alleged that Defendants fabricated the evidence against him; as a result, the Court can infer that the grand jury indictment was fraudulently obtained. A finding of probable cause based on falsified information cannot constitute a valid probable cause finding for the purpose of this analysis. Thus, the Court cannot conclude at this stage in the proceedings that the indictment constitutes conclusive evidence that probable cause existed to prosecute Plaintiff. *See id.* ("'Prima facie probable cause' is established by return of indictment by grand jury, but it is not conclusive evidence of probable cause and it may be rebutted by other evidence such as proof that indictment was obtained by false or fraudulent testimony before grand jury or other improper or fraudulent means.") (quoting *Freides v. Sani-Mode Mfg. Co.,* 211 N.E.2d 286, 296 (Ill. 1965)).

Defendants also argue that the Court should dismiss the malicious prosecution claim because the proceedings did not resolve favorably for Plaintiff. In support, they rely on Plaintiff's convictions on four counts of official misconduct and obstructing justice. Defendants state that the plea agreement transcript shows that the State agreed to dismiss the initial charges against Plaintiff in exchange for Plaintiff's guilty plea on four newly-filed charges of official misconduct and obstruction of justice, charges that Plaintiff's counsel described as "lesser included offenses" to the original charges (#13-6, p. 2).

Plaintiff responds that his guilty plea to the amended charges was in the form of an *Alford* plea, pursuant to which an accused pleads guilty to criminal charges while affirmatively

maintaining his factual innocence. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). The Court concludes the nature of the plea in this case is not material. The Plaintiff also contends that because he was never convicted of the felony charges, the proceedings against him ended favorably.

In the context of a malicious prosecution claim under Illinois law, a termination of criminal proceedings in favor of the accused can only occur when the charges are abandoned for reasons that indicate the accused is innocent. *See Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill. 1996); *Washington v. Summerville*, 127 F.3d 552, 557-58 (7th Cir. 1997). In determining whether a disposition constitutes a "favorable termination" of the proceedings, courts must look at the circumstances under which the disposition was obtained, not the form or title. *Cult Awareness Network v. Church of Scientology Int'l,* 685 N.E.2d 1347, 1352-53 (Ill. 1997). In *Swick*, the Illinois Supreme Court considered the question of whether a criminal proceeding terminated by a *nolle prosequi*[1] had ended favorably for the accused. The Illinois Supreme Court stated that "[t]he abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Swick*, 662 N.E.2d at 1243. A plaintiff bears the burden of establishing that the underlying criminal proceedings ended favorably for him. *Id.*

Here, Plaintiff alleges that the grand jury indicted him on 49 felony counts. According to Plaintiff, he was not convicted on those charges. Instead, he pled guilty to four amended counts that were not part of the indictment originally brought against him in exchange for the dismissal of the felony counts. (#13-2, p. 3.) Thus, the abandonment of the original charges resulted from an agreement or compromise. Abandonment of a criminal proceeding as a result of agreement or

---

[1]A *nolle prosequi* is a formal entry of record whereby the prosecuting attorney formally declares that he is unwilling to prosecute a case. *Ferguson v. City of Chi.*, 820 N.E.2d 455, 460 (Ill. 2004). A *nolle prosequi* order terminates the charge and requires the institution of a new and separate proceeding to prosecute the defendant. *Id.*

compromise does not constitute a favorable resolution for Plaintiff.  Because Plaintiff cannot establish the second element of a malicious prosecution claim, the Court recommends dismissing the malicious prosecution claim.  Therefore, the Court need not consider Defendants' other arguments regarding the malicious prosecution claim.

### 2.  The First Amendment Claim

Defendants also argue that the Court should dismiss Plaintiff's First Amendment claim because probable cause existed for the prosecution and the prosecution did not resolve favorably for Plaintiff.  As noted above, the Court cannot conclude at this stage that probable cause existed to prosecute Plaintiff.

As to the favorable resolution argument, Defendants provide no authority or discussion to support their assumption that this is an element of a First Amendment retaliation claim.  The elements of claim based on First Amendment retaliation include that (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff suffered a deprivation likely to deter the free exercise of the plaintiff's First Amendment rights; and (3) the plaintiff's speech was a but-for cause of the defendant's retaliation.  *Massey*, 457 F.3d at 716; *Fairley*, 2009 WL 2525564, at *5.  To state a claim for successful retaliatory inducement to prosecute, the plaintiff must also allege lack of probable cause.  *Hartman*, 535 F.3d at 626.  Thus, a favorable resolution is not an element of the claim.  Accordingly, the Court recommends denying the motion to dismiss the First Amendment claim on the basis that the underlying proceedings did not terminate favorably for Plaintiff.

### IV.  Summary

For the reasons set forth above, this Court  recommends that Defendants Mills and Damilano's Motion To Dismiss **(#12)** be **GRANTED** as to the malicious prosecution claim.  As to the First Amendment claim, the Court recommends that the motion be **GRANTED** to the extent that the claim against Defendant Mills is based on Mills' decision to prosecute Plaintiff, **GRANTED** to the extent that the claim against Defendant Damilano is based on his grand jury

testimony, and **DENIED** as to the remaining bases for the First Amendment claim against Mills and Damilano.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 2nd day of October, 2009.

                                                           s/ DAVID G. BERNTHAL
                                                           U.S. MAGISTRATE JUDGE